IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

U.S. DISTRICT COURT
FILED AT WHEELING, WV

MAR 2 9 2012

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

GULF COAST BANK & TRUST CO.,

Plaintiff,

v.                                      Civil Action No. 5:11CV75
                                                    (STAMP)

GENE CHARLES VALENTINE,
GENE CHARLES VALENTINE TRUST,
PEACE POINT FARM EQUESTRIAN FACILITY, LLC,
a West Virginia limited liability company and
the FEDERAL DEPOSIT INSURANCE CORPORATION,
an agency of the government of
the United States of America,

Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT FDIC'S MOTION TO DISMISS,
DENYING DEFENDANTS GENE CHARLES VALENTINE,
GENE CHARLES VALENTINE TRUST AND
PEACE POINT FARM EQUESTRIAN FACILITY, LLC'S
MOTION TO DISMISS DEFENDANT FDIC AND REMAND,
DENYING THE PLAINTIFF'S MOTION TO DISMISS AND
GRANTING AS FRAMED DEFENDANTS GENE CHARLES VALENTINE,
GENE CHARLES VALENTINE TRUST AND
PEACE POINT FARM EQUESTRIAN FACILITY, LLC'S
MOTION TO ENFORCE STATE COURT ORDERS**

I.  Background

This civil action was originally filed by the plaintiff, Gulf

Coast Bank & Trust Co. (hereinafter "Gulf Coast") in the Circuit

Court of Brooke County, West Virginia.  The plaintiff asserts that

it is the current owner of three promissory notes made payable to

Ameribank, Inc. by Gene Charles Valentine, Gene Charles Valentine

Trust, and Peace Point Farm Equestrian Facility, LLC (hereinafter

"the Valentine defendants"), having purchased the notes from the

Federal Deposit Insurance Company ("FDIC"), receiver of Ameribank,

Inc. following its failure.  The amended complaint alleges that the

Valentine defendants are in default on all three of these
promissory notes, and seeks a judgment against these defendants in
the full amount owed on the notes as well as for reimbursement of
legal fees and costs.  The amended complaint also seeks judgment
against these defendants permitting the plaintiff to exercise its
alleged rights to carry out a previously noticed deed of trust sale
for twelve tracts of real property located in Buffalo District,
Brooke County, West Virginia (hereinafter "the former equestrian
center") which were allegedly executed and delivered by deed of
trust and fixture filing in order to secure payment of one of the
promissory notes.   Finally, the amended complaint contains a
request for declaratory judgment to determine the plaintiff's legal
rights under the promissory note and commercial guarantee
agreement, as well as the rights of all other parties to this
action.

The Federal Deposit Insurance Corporation (hereinafter "FDIC")
subsequently removed this action to this Court pursuant to 28
U.S.C. §§ 1442(a)(1) and 1446, and 12 U.S.C. § 1819(b)(2)(B).
Following removal, the Valentine defendants answered the amended
complaint and filed a counterclaim against the plaintiff, raising
nine counts relating to the plaintiff's purchase and subsequent
handling of the notes in question.  The Valentine defendants also
filed a motion asking this Court to enforce orders entered by the
state court in this matter which continued a previously scheduled
deed of trust sale of the former equestrian center until a

continued hearing on the Valentine defendants' motion for a preliminary injunction could be held following the FDIC's initial appearance.[1]  This Court stayed and continued the deed of trust sale and established an expedited briefing schedule for all motions concerning this Court's ability to decide this case.

The plaintiff then filed a motion to dismiss the Valentine defendants' counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6), and pursuant to the expedited briefing schedule, the Valentine defendants filed a motion to dismiss the FDIC and to remand, and the FDIC filed a motion to dismiss based upon a lack of subject matter jurisdiction.  All three of these motions have now been fully briefed and are ripe for disposition by this Court.

## II.  Applicable Law

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Federal Rules of Civil Procedure provide that, prior to filing a responsive pleading, a defendant may challenge the district court's subject matter jurisdiction over the claims brought against it by filing a motion to dismiss under Rule

---

[1]This motion for a preliminary injunction was filed by the Valentine defendants in the Brooke County Circuit Court.  The state court initially continued the hearing on the preliminary injunction on plaintiff's motion.  However, before the date scheduled for the continued hearing, the plaintiff added the FDIC as a defendant.  As a result, the state court granted a further continuation of the hearing until such time as would be determined after the FDIC entered a initial appearance in the case.  The FDIC ultimately removed this case to this court before the presiding state court judge ruled on the motion.

12(b)(1).    The  federal  district  courts  are  courts  of  limited
jurisdiction,  and  may  only  hear  cases  over  which  they  have  been
granted  jurisdiction  either  by  statute  or  by  the  Constitution.
When  a  defendant  brings  a  motion  under  Rule  12(b)(1),  a  court  must
dismiss  the  case  against  it  if  the  court  finds  that  it  "lacks  the
statutory  or  constitutional  power  to  adjudicate  it."  Makarova  v.
United  States,  201  F.3d  110,  113  (2d  Cir.  2000).

     Once  subject  matter  jurisdiction  has  been  challenged,  it  is
the  plaintiff's  "burden  of  proving  that  subject  matter  jurisdiction
exists."  Evans  v.  B.  F.  Perkins  Co.,  166  F.3d  642,  647  (4th  Cir.
1999).    Further,  because  subject  matter  jurisdiction  cannot  be
waived  by  the  court  or  by  the  parties,  and  if  lacking,  renders  the
district  court  wholly  unable  to  rule  on  any  matter  in  controversy,
in  resolving  a  motion  to  dismiss  for  lack  of  subject  matter
jurisdiction  under  Rule  12(b)(1),  a  district  court  "may  refer  to
evidence  outside  the  pleadings  without  converting  the  proceeding  to
one  for  summary  judgment."  Richmond,  F.  &  P.  R.  Co.  v.  United
States,  945  F.2d  765,  768  (4th  Cir.  1991).

B.   Motion  to  Remand

     A  defendant  may  remove  a  case  from  state  court  to  federal
court  in  instances  where  the  federal  court  is  able  to  exercise
original  jurisdiction  over  the  matter.  28  U.S.C.  §  1441.  Under  28
U.S.C.  §  1442(a)(1),  any  civil  action  brought  in  state  court  which
is  "against  or  directed  to  .  .  .  (1)  The  United  States  or  any
agency  thereof  .  .  ."  may  be  removed  "to  the  district  court  of  the

United States for the district and division embracing the place wherein it is pending." Pursuant to 28 U.S.C. § 1331, federal district courts have original jurisdiction and thus removal jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Title 12, United States Code, Section 1819(2)(A)-(B) ensures original and removal jurisdiction in the district courts over cases involving the FDIC by invoking 28 U.S.C. § 1331 and providing that "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States."

C.   <u>Motion to Dismiss Counterclaim for Failure to State a Claim</u>

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to challenge the sufficiency of claims against it by motion prior to the answering a complaint. The Rule provides for dismissal if the plaintiff has failed to "raise a claim for which relief can be granted."

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed. 1998). In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the factual allegations contained in the complaint as true. <u>Advanced Health-</u>

Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990).

The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief about the speculative level." Twombly, 550 U.S. at 555.

III. <u>Discussion</u>

A.   <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

Here, the FDIC claims that this Court lacks subject matter jurisdiction to hear the claims against it in the plaintiff's amended complaint and in the Valentine defendants' counterclaim pursuant to 12 U.S.C. §§ 1821(j) and 1821(d)(13)(D); two separate provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). 12 U.S.C. § 1811, et. seq. FIRREA grants the FDIC great deference and wide latitude of control in the execution of its duties as both conservator of active banking institutions and receiver of failed banking institutions. In this capacity, FIRREA affirmatively deprives courts of jurisdiction to render certain relief which would limit or affect the FDIC's ability to undertake and effectuate its duties. Such restraint of judicial review enables the FDIC to more efficiently reallocate assets and liabilities of failed institutions, thus aiding it in "tak[ing] all actions necessary to resolve the problems posed by a financial institution in default." H.R. Rep. No. 54(I), 101st Cong. 1st Sess. 2 (1989), reprinted in 1989 U.S.C.C.A. 86, 126 (1989).

   1.   <u>Title 12, United States Code, Section 1821(j)</u>

Title 12, United States Code, Section 1821(j) represents one such deprivation of jurisdiction, and provides that, with exceptions not relevant here, no court has jurisdiction to grant equitable relief which would "restrain or affect the exercise of

7

powers or functions of the Corporation as a conservator or a receiver." Thus, if the equitable claims raised by the parties here could result in the invalidation of the plaintiff's purchase of the notes relevant to this case and affect the FDIC's sale of those assets as receiver of Ameribank, this Court lacks jurisdiction to decide those claims. This Court agrees with the FDIC that this is the case with regard to both of these claims and that they must be dismissed as a result.

Initially, § 1821(j) inarguably deprives this Court of jurisdiction to adjudicate Count III of the plaintiff's amended complaint, the plaintiff's declaratory judgment claim. Count III of the amended complaint asks this Court for equitable relief -- a determination of rights through a declaratory judgment -- with regard to the validity Gulf Coast's purchase of the notes in question from the FDIC as receiver of Ameribank. Specifically, the claim asks this Court to determine whether the FDIC and Gulf Coast engaged in a valid and enforceable transfer of the assets of Ameribank and whether this transfer has effectively made Gulf Coast the owner of the notes.

The transfer of these notes as assets of the failed institution Ameribank falls squarely within the "powers or functions of the Corporation" in its capacity as a receiver. Id. Section 1821(d)(G) specifically delineates that, as a receiver of a failed institution, the FDIC may "transfer any asset or liability of the institution in default . . ." If this Court were to grant

the plaintiff the declaratory judgment that it seeks in Count III, such a judgment could affect the transfer of the notes subject to this action in that the declaratory judgment could find the transfer invalid and thus nullified.   This Court does not have jurisdiction to make such a determination.   See Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707, 715 (8th Cir. 1996) (rescinding loan purchases "would act as an impermissible restraint on the ability of the FDIC to exercise its powers as receiver.")

It is also noted that the plaintiff itself does not disagree with this conclusion.   See ECF No. 37 *3 ("Gulf Coast believes that the law and facts in this matter support the arguments contained in the FDIC's motion to dismiss.").   In a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss, the burden of proving the existence of subject matter jurisdiction lies with the plaintiff, and here, rather than attempt to make such a showing, the plaintiff concedes the lack of jurisdiction.   Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).   Therefore, this Court finds that it does not have jurisdiction over Count III of the plaintiff's amended complaint and it is thus dismissed.

Further, and for the same reasons that Count III of the amended complaint must be dismissed for lack of jurisdiction pursuant to 12 U.S.C. § 1821(j), Count Nine of the Valentine defendants' counterclaim must also be dismissed.   This claim is essentially identical to the declaratory judgment claim brought in Count III of the plaintiff's amended complaint, with the only

difference being that the Valentine defendants' declaratory judgment claim requests that the Court reach the opposite conclusion of that requested by the plaintiff. However, this Court addresses it separately because the Valentine defendants ask this Court to not dismiss its claim for declaratory judgment and rather to exercise "its inherent discretion to refuse to consider declaratory judgments in this action." (ECF No. 46 *9.)

The Valentine defendants' argument in this regard, it appears, is that this case should be remanded to state court, as is argued in the Valentine defendants' motion to remand, and as a result, this Court should abstain from making any conclusions with regard to the declaratory judgment actions and allow the state court to make such decisions. This Court finds that abstention is inapplicable in this instance, and even if it were applicable, declines to exercise any discretion to use it at this time.

Abstention is a doctrine in which a federal court will decline to adjudicate an issue over which it has jurisdiction in order to allow deference to a state court on that issue. See Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371 (4th Cir. 1994). It is intended to allow a state court to decide issues which are more properly decided in that forum rather than in a federal court, in a context where a parallel state proceeding is ongoing concurrently with a federal proceeding. Id. at 377. Here, there is no parallel state court proceeding ongoing, and to the extent that remand could make abstention more of a consideration, for the reasons explained

below, this Court declines to remand this case to state court. Further, the question of jurisdiction in this case is one of federal statutory interpretation and is not a question which lies traditionally and more appropriately with the state courts. The goal of efficiency would also be flouted by abstaining in this instance. See United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493-94 (4th Cir. 1998). Finally, abstention is a doctrine to be applied when a court could rule on a claim or issue but finds that it is more prudent to decline to do so; this is not the case here, because, as described above, this Court does not have jurisdiction to adjudicate the two declaratory judgment claims in this action. Therefore, Count Nine of the Valentine defendants' counterclaim is also dismissed for lack of subject matter jurisdiction.

As a final matter, it is important to note that Count One of the Valentine defendants' counterclaim also asserts a claim for equitable relief, in the form of an injunction which would prevent the plaintiff from completing a deed of trust sale of the equestrian facility. That claim asks this Court to enter a preliminary injunction based upon multiple contentions of wrongdoing on the part of the plaintiff. However, this claim also asks that the injunction rest upon an argument that Gulf Coast is not the true owner and holder of the notes in question. While this Court does not find that it is without jurisdiction to decide this claim as a whole, in reviewing this claim, this Court does not have jurisdiction to base any ruling upon the contention that Gulf

Coast's purchase of the notes was ineffective, thus, Count One of the counterclaim will not be reviewed on this basis.

    2.   <u>Title 12, United States Code, Section 1821(d)(13)(D)</u>

The FDIC further moves to dismiss all of the remaining claims raised against it in the Valentine defendants' counterclaim, pursuant to § 1821(d)(13)(D) of FIRREA. That section of the Act deprives courts of jurisdiction over claims "for payment from, or seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver . . .; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver" when the administrative remedies provided by FIRREA, § 1821(d)(5)-(14), have not been exhausted. The United States Court of Appeals for the Fourth Circuit has concluded that this section wholly deprives courts of jurisdiction when a claim raised against the FDIC or a failed institution for which the FDIC is receiver was not previously exhausted pursuant to FIRREA administrative remedies. <u>Tillman v. RTC</u>, 37 F.3d 1032 (4th Cir. 1994).

It is not disputed that the Valentine defendants did not exhaust the relevant administrative remedies with regard to the claims raised in the counterclaim. However, the Valentine defendants advance two arguments against dismissal of their counterclaim on this basis. First, the Valentine defendants argue that the exhaustion requirement does not apply to them because they

are debtors, not creditors, of Ameribank and the exhaustion requirement only applies to creditors.

In support of this argument, the Valentine defendants contend that the exhaustion requirement only applies when a claimant has received a mailed notice of the FDIC's receivership, and as such notice is only given to creditors of a failed bank, the exhaustion requirement cannot apply to debtors. However, this conclusion is not supported by precedent, the plain language of FIRREA, or by the goals behind the administrative claims process as a whole.

As an initial matter, the language of the very statutory section applicable to this Court's jurisdiction in this case expressly states that courts do not have jurisdiction over "any claim" as delineated in the statute that has not exhausted the administrative record. 12 U.S.C. § 1821(d)(13)(D) (emphasis added). The statute makes no reference to the claimant bringing that claim. Further, the FIRREA administrative claims process was created in order to organize "an expeditious and efficient manner" by which to manage claims against the FDIC and the failed banking institutions which it receives. Brady Dev. Co. v. Resolution Trust Corp., 14 F.3d 998, 1003 (4th Cir. 1994). The jurisdictional deprivation created by § 1821(d)(13)(D) was intended by Congress to enforce this administrative process. Id. Such enforcement supports the goal of simplifying and streamlining claims, and further aids the FDIC-receiver in its overarching purpose of resolving the problems created by failing financial institutions as

quickly and efficiently as possible.  These general goals are not served by restriction to any types of claimants, and courts have consistently rejected invitations to make such distinctions.

As the FDIC argues in its reply, courts which have been presented with the question of whether debtors are required to exhaust the administrative remedies of FIRREA before bringing their claims to court have uniformly answered in the affirmative.  See ECF No. 48 *6 (listing four circuits finding specifically that debtors are required to exhaust).  This Court specifically takes note of the Eighth Circuit's opinion in Tri-State Hotels, 79 F.3d at 714.  In that case, the Eighth Circuit noted the "great weight" of authority holding that the exhaustion requirement applies to debtors, but also specifically rejected the identical argument that the Valentine defendants raise here, that "because the notice provisions of FIRREA apply only to creditors, § 1821(d)(13)(D)'s exhaustion requirement should be similarly limited." Id. So too does this Court decline the Valentine defendants' invitation to restrict the exhaustion requirement to creditors.

The Valentine defendants' second argument in favor of their contention that the exhaustion requirement does not apply to them in this case is that they never received a notification of the FDIC's receivership as is required by FIRREA in order for the exhaustion requirement to apply.  The FDIC maintains that, while the exhaustion requirement applies to debtors, the notice requirement only applies to creditors.  Additionally, it argues

that, even if the notice requirement did apply to debtors, it is undisputed that the Valentine defendants had actual notice of the appointment of a receiver for Ameribank,[2] so the fact that they did not receive formal written notice is without consequence.

This Court believes that requiring formal notice to trigger the exhaustion requirement when there is direct proof of actual notice would allow form to triumph over function and would work in opposition to the above described goals of the administrative process created by FIRREA. Further, Fourth Circuit jurisprudence has continually focused on notice to the claimant rather than blindly requiring formal notice when a claimant had actual notice of the receivership but failed to exhaust his claims through the administrative process before filing suit. Addair v. FDIC, 2011 U.S. Dist. LEXIS 76609 (S.D. W. Va. July 12, 2011) (even though the plaintiffs did not receive actual notice of the FDIC's receivership, jurisdiction was lacking because they had actual knowledge but did not exhaust); Elmco Props. v. Second Nat'l Fed. Sav. Ass'n, 94 F.3d 914, 920 (inquiry is whether "constitutionally adequate notice" was given). Accordingly, because the Valentine defendants had actual knowledge of the FDIC receivership, the fact that they did not receive formal notice does not nullify the exhaustion requirement.

---

[2]The Valentine defendants argue within their counterclaim that they spoke with the FDIC about the possibility of purchasing the notes when FDIC was appointed as receiver of Ameribank. This Court thus assumes that the Valentine defendants admit that they had actual notice of the receivership.

In accordance with the above findings, this Court does not have jurisdiction to adjudicate any claims of wrongdoing against either Ameribank or FDIC.  While the Valentine defendants concede that, if the exhaustion requirement applies, all claims of wrongdoing on the part of Ameribank fail, they argue against any further dismissal that no claims have been raised against FDIC and that many of the claims point to wrongdoing solely on the part of the plaintiff, so dismissal of their entire counterclaim would be inappropriate.  In reply, the FDIC agrees that, to the extent that claims raised in the counterclaim allege wrongdoing of Gulf Coast only, the jurisdictional bar created by § 1821(d)(13)(D) does not apply.

This Court must dismiss the following claims of the counterclaim due to a failure to exhaust administrative remedies: Count One, as described above, and to the extent that it contends that acts or omissions of Ameribank and/or FDIC make the sale of the notes ineffective and/or make the notes unenforceable; Count Three in its entirety, as the fraud claim is based entirely upon acts or omissions of Ameribank; Count Four to the extent that it makes allegations that Ameribank acted in bad faith; Count Five to the extent that it alleges that Ameribank breached fiduciary dut[ies] to the Valentine defendants and; Count Six in its entirety because, although the claim names the plaintiff as a negligent party, it only alleges negligence "in the process of underwriting and overseeing Defendants' loan application."  The underwriting and

16

overseeing of the defendants' loan application occurred entirely before Gulf Coast purchased the notes. Therefore, the negligence alleged in this count could only, as a matter of law, have been the negligence of Ameribank. Finally, Count Eight is also dismissed to the extent that it alleges that punitive damages are appropriate based upon the acts and/or omissions of the FDIC and/or Ameribank.

The FDIC also requests that this Court dismiss Count Seven of the counterclaim because it alleges that FDIC "deviated from 'routine procedures' in the manner in which it disposed of Ameribank's assets." However, this Court finds that the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D) does not apply to Count Seven. This claim, an allegation of tortious interference, alleges that the plaintiff "intentionally interfered with Defendants' contractual and/or business relationship or expectation" by allegedly causing the FDIC to deviate from its procedures as described above. A close review of the allegations of Count Seven shows that the alleged deviation by FDIC is not the wrongdoing which the count alleges, but rather serves as the <u>result</u> of the alleged wrongdoing of Gulf Coast. This count does not qualify as a claim seeking relief for any alleged deviation of the FDIC, but is rather a claim seeking relief for the inducement of that deviation by Gulf Coast.

As a result of the foregoing, this Court finds that it does not have jurisdiction over any of the claims brought either against or concerning the FDIC and/or Ameribank pursuant to 12 U.S.C.

§§ 1821(j) and (d)(13)(D). Accordingly, along with the dismissal of these claims as explained above, the FDIC is likewise dismissed as a party to this action.

B.   Motion to Remand

As a threshold matter, this Court asked the Valentine defendants to brief the issue of whether a counterclaim plaintiff could move to remand this action. Both the Valentine defendants and the plaintiff briefed this issue and this Court agrees with the consensus of both parties, that any party may move to remand. Despite the fact that case law specifically allowing a counterclaim plaintiff to request remand was not presented, sufficient evidence was shown to support the contention that the Valentine defendants may seek remand.

First, the Valentine defendants pointed to the remand statute itself, which does not specify that any certain party must move for remand, only that if jurisdiction is found to be lacking, the case must be remanded. 28 U.S.C. § 1447(c). Further, as is noted in Wright and Miller's Federal Practice and Procedure, remand is based upon a lack of subject matter jurisdiction, an objection which "no party can waive." 14C Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3739 (4th ed.). Finally, a wealth of case law exists as evidence that both plaintiffs and defendants, and even courts may seek remand. E.g. American Fire & Cas. Co. v. Finn, 181 F.2d 845 (5th Cir. 1950), rev'd on other grounds, 341 U.S. 6 (1951)); In re: Diet Drugs Products Liability Litigation,

294 F.Supp.2d 667, 672 (E.D. Pa., 2003). Accordingly, the Valentine defendants may move to remand this case.

The Valentine defendants' motion to remand is two-part. Initially, the motion argues that the FDIC must be dismissed from this action because it either has no cognizable interest in this action, or if it does, because that interest is so insubstantial and remote that joining the FDIC to this matter was not proper. Both the FDIC and the plaintiff maintain that the FDIC has a strong interest in both the above-dismissed declaratory judgment claims, and in the above-dismissed counterclaim counts which impute wrongdoing upon Ameribank. The plaintiff further argues that the Valentine defendants are without standing to move for the dismissal of another party in this context.

It is not necessary for this Court to decide whether or not the Valentine defendants can properly move to dismiss the FDIC, because it has been previously determined that this Court lacks subject matter jurisdiction to decide any of the claims that led to the FDIC's joinder in this matter, and the FDIC has already been dismissed as a result. However, due to the recognition given above to the FDIC's motion to dismiss, this Court believes that a determination regarding whether or not the FDIC has a cognizable interest in this action would be beneficial. To this issue, this Court finds that the FDIC was a proper, if not necessary, party to this action.

First, the Valentine defendants' argument that the FDIC did not have a true interest in the above-dismissed declaratory judgment claims does not seem to have any basis in reason. The Valentine defendants concede that a result of the declaratory judgment claims could have been nullification of the FDIC's sale of the subject notes to the plaintiff. They further concede that such a result would require the FDIC to reassign the notes to another assignee. However, they somehow then come to the conclusion that the FDIC has "no interest in influencing the determination one way or another." This statement is without support or reason. The FDIC has a strong interest in preventing the sale of the notes from being nullified, because such a result would require the FDIC to expend time, money and manpower to resell the notes, and would also expose the FDIC to possible liability to Gulf Coast.

The Valentine defendants also ignore the fact that their counterclaim alleges wrongdoing against Ameribank. They argue that the wrongdoing of Ameribank is attributable to Gulf Coast, its successor-in-interest on the notes. However, when the FDIC becomes receiver of a failed institution, it steps wholly in the shoes of that institution, and accepts all assets and liabilities thereof. Therefore, in asserting wrongdoing against Ameribank, the Valentine defendants asserted wrongdoing against the FDIC as receiver of Ameribank, giving it yet another highly cognizable interest in this matter. While the FDIC is nonetheless dismissed from this action, it was indeed a proper party when joined.

The Valentine defendants then argue that remand of this action is proper because, once the FDIC is dismissed, the sole bases for federal removal jurisdiction -- 28 U.S.C. § 1442(a)(1) (agency of United States government as party) and 12 U.S.C. § 1819 (all suits against the FDIC are brought under the laws of the United States) -- are no longer present in the case.

In support of this argument, the Valentine defendants maintain that the Fourth Circuit has not ruled upon whether or not courts maintain the federal question jurisdiction created by 12 U.S.C. § 1819 if the FDIC has been dismissed from a case where jurisdiction relies upon that statutory section.  However, they argue, of the circuits that have answered this question, a majority have decided jurisdiction did not remain.  See New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492 (3d Cir. 1996); Mill Investments, Inc. v. Brooks Woolen Co., 797 F. Supp. 49 (D. Me. 1992); but see Federal Sav. & Loan Ins. Corp. v. Griffin, 935 F.2d 691 (5th Cir. 1991); and Casey v. FDIC, 583 F.3d 586, 591 (8th Cir. 2009).  The plaintiff, on the other hand, argues that, in line with the logic of the Fifth Circuit in Griffin and the Eighth Circuit in Casey, the addition of the FDIC to the action effectively transforms the entire action into a federal question, and the FDIC's subsequent dismissal does not change the federal character of the action as a whole.

This Court does not find it necessary to reach a conclusion with regard to this complex issue, nor on the plaintiff's

contention that the D'Oench, Duhme doctrine[3] applies to preserve federal question jurisdiction in this case.  This Court finds that it retains jurisdiction based upon complete diversity jurisdiction under 28 U.S.C.§ 1332, and also has the ability to retain supplemental jurisdiction under 28 U.S.C. § 1367.

Inspection of the pleadings in this case reveals that, after the elimination of FDIC as a party, the two required elements of federal diversity jurisdiction exist to create continuing jurisdiction over this matter.  See 28 U.S.C. § 1332.  According to both the amended complaint and the Valentine defendants' counterclaim, complete diversity exists between the remaining parties.  The plaintiff avers, and the Valentine defendants agree, that the plaintiff is a Louisiana corporation having is principal place of business at 200 St. Charles Avenue, New Orleans, Louisiana; thus making it a resident of the State of Louisiana. The Valentine defendants, on the other hand, are all residents of the State of West Virginia.  Accordingly, the plaintiff and the defendants are "citizens of different States." Id.  Further, the plaintiff's amended complaint seeks full payment on the notes in question, a total demand of well over $3,000,000.00 -- easily above

---

[3]D'Oench, Duhme is a doctrine which prohibits the enforcement of extra-contractual, or "side" agreements entered into by a claimant and a failed bank when that bank has entered into FDIC receivership. D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942). Only written agreements memorialized in contractual agreements can be enforced against the FDIC as a result of this doctrine, thus protecting the FDIC from the surprise of alleged outside liabilities and obligations which would not be discoverable through investigation of a failed institution's records. See id.

the statutory amount in question of $75,000.00.  Id.  As a result,
even if the dismissal of the FDIC marks the end of federal question
jurisdiction over this matter, this Court continues to possess
jurisdiction on the basis of diversity.  See Gutierrez De Martinez
v. Lamagno, 515 U.S. 417, 434-35 (1995) (noting that, if United
States is removed as a party and substituted with a private
individual defendant, and parties are of diverse citizenship,
jurisdiction would remain).

Further, even if diversity jurisdiction did not exist, this
Court would have the discretion to retain jurisdiction pursuant to
supplemental jurisdiction.  28 U.S.C. § 1367.  In New Rock Asset
Partners, LLC, the Third Circuit held that, although FIRREA could
not form the basis for jurisdiction after the dismissal of the
receiver, courts could retain supplemental jurisdiction over the
case that has now "become[] a state law claim" without crossing
"the bounds of Article III."  101 F.3d at 1506.

This conclusion was based upon the plurality reasoning in
Lamagno, which argued that the elimination of a federal question
after the removal of an action on that basis does not pose a
"grave" "Article III problem" when the federal question which
existed at the time of removal was nonfrivolous.  515 U.S. at 435.
Had the federal question remained, the federal district court would
have decided the supplemental state law issues anyway under 28
U.S.C. § 1367, so in the interest of "judicial economy, convenience
and fairness to litigants," it is "reasonable and proper for the

federal forum to proceed beyond the federal question to final judgment once it has invested time and resources" on the initial issues of the case. Id. at 435-36.

This Court agrees with the position of the Third Circuit, and in line with the reasoning of the plurality in Lamagno, that Article III is not offended by exercising supplemental jurisdiction over the remainder of this action after the bases for removal have been dismissed. The Valentine defendants urge this Court to decline to exercise supplemental jurisdiction in this case. However, they do not support this invitation with any reasoning. This Court believes that, in the interest of judicial economy, as well as fairness to the parties and continuity within this case, it is appropriate to exercise supplemental jurisdiction and retain jurisdiction over this civil action. Accordingly, the Valentine defendants' motion to remand must be denied.

C.  Motion to Dismiss Counterclaim

The plaintiff argues that the Valentine defendants' counterclaim should be dismissed because none of the counts state a claim upon which relief can be granted. Gulf Coast contends that the merits of Count One, which seeks a preliminary injunction of the plaintiff's deed of trust sale of the equestrian facility, Count Eight, which requests punitive damages, and Count Nine, which asks for declaratory judgment regarding the ownership of the notes, depend upon the merits of the other six claims. Thus, if the other six claims are without merit, Counts One, Eight and Nine should be

dismissed.[4]   Accordingly, this Court will assess the merits of Counts Two through Seven and only dismiss Counts One and Eight if all of those counts are without merit.[5]

    1.   <u>Count Two</u>

    The plaintiff contends that Count Two, which alleges deficiencies in the trustee notice of sale for the deed of trust sale is moot because the sale has not occurred, and has been postponed by agreement of the parties. This Court agrees. The only allegations made in this count are that the notice of sale was not in compliance with West Virginia law, and the count simply requests that the sale be enjoined as a result of the deficiencies. At this point, the sale has been postponed and has not been rescheduled. Any deficiency in any notice of a previously scheduled sale is without consequence as the sale never occurred. The Valentine defendants do not contest this conclusion, and thus Count Two is dismissed as moot.

---

    [4]Above, this Court has dismissed Count Nine in its entirety due to lack of subject matter jurisdiction, Count One in part insofar as it requests an injunction on the basis that the sale of the notes was invalid, and Count Eight in part insofar as it requests punitive damages for alleged actions of Ameribank.

    [5]This Court has dismissed Counts Three and Six in their entirety for lack of subject matter jurisdiction, as well as all portions of Counts Four and Five insofar as they allege wrongdoing against Ameribank. These portions of the counterclaim will not be addressed with regard to the Federal Rule of Civil Procedure 12(b)(6) motion. Similarly, because all of the plaintiff's <u>D'Oench, Duhme</u> arguments can only apply to any claims which would attempt to impute liability upon Gulf Coast for the extra contractual activity of Ameribank, these arguments are likewise not addressed.

2.   <u>Counts Four and Five</u>

Count Four raises a claim for bad faith, and Count Five alleges breach of fiduciary duty.  This Court has identified eight separate allegations of bad faith and seven separate allegations of breach of fiduciary duty made against the plaintiff in these claims.  The plaintiff argues that these counts must be dismissed because it did not owe any duty to the Valentine defendants with respect to any of the acts and/or omissions alleged.[6]  With regard to the bad faith allegations, the plaintiff maintains that no "duty of good faith" can alter the terms of the written contracts between the parties and that none of the allegations assert violations of obligations set forth in the loan documents.

However, the cases cited by the plaintiff to support this contention only disallow the use of the implied duty of good faith and fair dealing to override specific contractual terms.  In <u>Riggs Nat'l Bank v. Linch</u>, 36 F.3d 370 (4th Cir. 1994), the Fourth Circuit found that a debtor could not argue that an implied duty of good faith required the creditor to lower its prime rate when the relevant loan documents explicitly gave the creditor "sole discretion" to set the prime rate.  <u>Id.</u> at 373.  Similarly, in

---

[6]The plaintiff also argues that these allegations are "merely complaints about customer service" and do not rise to the level of tortious wrongdoing in the form of bad faith and/or breach of fiduciary duty.  However, the plaintiff cites to no law which would support a finding that such allegations do not create "plausible" liability under <u>Twombly</u>.  550 U.S. at 570.  Accordingly, this is a factual argument that does not support dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

<u>Grand Light & Supply Co v. Honeywell, Inc.</u>, 771 F.2d 672 (2d Cir. 1985), the Second Circuit refused to allow the duty of good faith to override an express contractual term which provided for thirty days notice of termination.  While the plaintiff does argue that none of the allegations made by the Valentine defendants in Count Four constitute duties affirmatively <u>established</u> by the contract, there is no argument or evidence provided to show that liability pursuant to the allegations would specifically abrogate terms of the contract.  Therefore, this Court disagrees with the plaintiff that Count Four fails to state a claim.

As to Count Five, this Court similarly finds that, at this early stage of litigation, the plaintiff has failed to establish that the Valentine defendants have not met their pleading requirements as to a breach of fiduciary duty.  While this Court acknowledges that, as a general rule, no fiduciary duty exists between debtors and creditors, certain factual circumstances create such duties.  <u>Knapp v. American General Finance Inc.</u>, 111 F. Supp. 2d 758, 766 (S.D. W. Va. 2000).  Further, this Court acknowledges that much of the law cited to support the Valentine defendants' contention that the circumstances of this case created a fiduciary duty, may not successfully establish that a fiduciary duty was owed in this instance.  However, in viewing the facts in the light most favorable to the Valentine defendants, these arguments, along with facts pled, are sufficient to "raise the right to relief above a speculative level."  <u>Twombly</u>, 550 U.S. at 555.  Accordingly, the

plaintiff's motion to dismiss is also denied with regard to Count Five.

    3.  <u>Count Seven</u>

The plaintiff contends that Count Seven fails to state a claim because this claim for tortious interference does not allege facts which would support an inference that the Valentine defendants had a "reasonable expectation of a valid, enforceable contract belonging to them." <u>Bryan v. Massachusetts Mut. Life Inc. Co.</u>, 178 W. Va. 773, 780 (1987). The plaintiff argues that the Valentine defendants merely allege that they had an expectation that they would be permitted to participate in the auction process. However, for the purposes of pleading under Federal Rule of Civil Procedure 9(c), it is reasonable to infer that the expectation of participation in the bidding process could constitute a reasonable expectation of obtaining the notes as a result of that process. The plaintiff has presented no law which states otherwise.

The plaintiff further argues that the Valentine defendants have not presented any facts to show that the plaintiff knew of a contract, or that Gulf Coast wrongfully and without justification interfered with that expectation. <u>See</u> <u>Bryan</u>, 178 W. Va. at 780. However, this Court believes that this is an issue of fact to which the Valentine defendants are entitled discovery. The Valentine defendants allege every element of this claim, and also allege the "wrongful conduct" of the plaintiff: that it acted to cause the

FDIC to deviate from its established procedures.  Accordingly, this claim satisfies the requirements of <u>Twombly</u>.

     4.   <u>Counts One and Eight</u>

As stated above, the merits of Counts One and Eight depend upon the merits of the other counts of the counterclaim.  Because this Court has declined to dismiss the other counts at this point, it also declines to dismiss the parts of Counts One and Eight over which it has jurisdiction.

D.  <u>Motion to Enforce State Court Orders</u>

The Valentine defendants have also asked this Court to enforce state court orders entered by the Circuit Court of Brooke County pursuant to 28 U.S.C. § 1450, which provides that "[a]ll injunctions, orders, and other proceedings had in the action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."  Specifically, the two orders that the Valentine defendants seek to enforce continue an injunction hearing, first upon motion of the plaintiff, and then upon the addition of the FDIC as a defendant.

This Court agrees to recognize that the state court had begun but did not conclude a hearing on the Valentine defendants' motion for preliminary injunction in this matter.  This Court also recognizes that the state court did not reach a ruling with regard to the motion for preliminary injunction and that it continued the deed of trust sale until it such time that it made a ruling.  However, beyond these recognitions, as well as the already provided

relief of continuing the trustee sale pending a hearing, this Court is unable to discern the relief sought by the Valentine defendants. These orders do not grant or deny any relief, but simply continue a hearing.

### IV.  Conclusion

For the reasons outlined in detail above, the FDIC's motion to dismiss is GRANTED.  The FDIC is therefore DISMISSED as a party to this action, and as described above, all claims against or concerning the FDIC and/or Ameribank, and/or acts or omissions of either of these parties are DISMISSED.  Further, the Valentine defendants' motion to dismiss FDIC and remand is DENIED.  The plaintiff's motion to dismiss the counterclaim is DENIED.  Finally, the Valentine defendants' motion to enforce state court orders is GRANTED AS FRAMED.  This Court acknowledges that the Circuit Court of Brooke County, West Virginia continued the deed of trust sale pending the conclusion of an injunction hearing which was never finished.  This Court also acknowledges that the Circuit Court of Brooke County did not rule on the Valentine defendants' motion for a preliminary injunction.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein.

DATED:     March 29, 2012

                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE